FILED

06/30/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0234

DA 25-0234

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 138N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LISA RENE JOHNSON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-24-653
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Jami Rebsom, Jami Rebsom Law Firm, PLLC, Livingston, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

     Ashley N. Carroll, Assistant City Attorney, Bozeman, Montana

Submitted on Briefs: May 20, 2026

Decided:  June 30, 2026

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On July 16, 2024, Lisa Rene Johnson (Johnson) was convicted of misdemeanor Operating a Vehicle with an Alcohol Concentration of 0.08 or More, 1st offense, in violation of § 61-8-1002(1)(b), MCA, following a jury trial in the Gallatin County Municipal Court. Johnson appealed the Municipal Court's denial of three motions to suppress evidence to the Eighteenth Judicial District Court, Gallatin County. On January 29, 2025, the District Court affirmed. We affirm.

¶3 Shortly after midnight on January 27, 2024, Officer Chesa Solorzano (Officer Solorzano)[1] and Officer William Cox (Officer Cox) were traveling north on 19th Avenue in Bozeman, Montana, when they observed a white SUV with an inoperable headlight turn northbound onto 19th Avenue from Durston Road. After observing the vehicle swerving within its lane, the officers initiated a traffic stop at the corner of 19th Avenue and Tschache Street. Officer Solorzano made contact with Johnson and informed her of the inoperable headlight. Johnson replied she was unaware of her headlight's status and that she was driving her mother-in-law's vehicle.

---

[1] Officer Solorzano had recently graduated from the Montana Law Enforcement Academy and was currently in training under the supervision of Officer Cox.

¶4      During the initial stop, Officer Solorzano detected the smell of alcohol on Johnson's breath and observed her slow, slurred speech.  Johnson provided her license but fumbled with her insurance information and failed to provide her vehicle registration.  Officer Solorzano asked whether Johnson had been drinking.  Johnson answered she had consumed one glass of wine earlier that evening.  Officer Solorzano told Johnson she "needed her to step out of the vehicle to make sure she was safe to drive."  Johnson complied and exited the vehicle to perform the standardized field sobriety tests (SFST).

¶5      Officer Cox conducted the SFSTs and administered a Preliminary Breath Test (PBT), both of which Johnson failed.  The officers arrested Johnson on suspicion of driving while intoxicated and transported her to the Gallatin County Detention Center.  On arrival, she provided a breath sample on the Intoxilyzer 9000, which returned a result of a 0.116 BAC.  On January 27, 2024, the State cited Johnson with misdemeanor Driving Under the Influence of Alcohol or Drugs, 1st offense, in violation of § 61-8-1002(1)(a), MCA, and Failure to Have Two Headlamps Properly Working, in violation of § 61-9-203(1), MCA.  On May 3, 2024, the State filed a motion to amend the complaint to include an alternate charge of misdemeanor Operating a Vehicle with an Alcohol Concentration of 0.08 or More, 1st offense, in violation of § 61-8-1002(1)(b), MCA.

¶6      On April 15, 2024, Johnson moved to suppress evidence in the Municipal Court.  First, she argued the traffic stop was unconstitutional due to the lack of particularized suspicion.  Second, she asserted the officers lacked articulable facts to prolong the stop, and thus the officers' subsequent DUI investigation was illegal.  Third, she argued that the SFST was improperly conducted, and the PBT results were unreliable.

¶7     On June 18, 2024, the Municipal Court held a hearing on Johnson's motions. Officer Solorzano testified to the stop; footage from the officers' bodycam and dashcam footage was introduced as evidence. The State represented it would not introduce the PBT result at trial. Johnson testified that both her headlights were in fact functional at the time of the stop and introduced a receipt showing the headlights were recently replaced.

¶8     On June 25, 2024, the Municipal Court denied Johnson's motions. The Municipal Court found the officers' body cam footage confirmed Officer Solorzano observed a non-functioning headlight. This, combined with observations of Johnson weaving within her lane, provided sufficient particularized suspicion for the initial stop. Second, the court concluded the officers had particularized suspicion to expand the scope of the stop due to the time of night, Johnson weaving within her lane, the odor of alcohol and slurred speech, and Johnson admitting to consuming alcohol that evening. Third, the court concluded that the question of the weight of the evidence regarding the officer's execution of the SFST properly belonged to the jury. Because the State provided notice of its intention to not offer the PBT results at trial, the court declined to address Johnson's argument regarding the PBT result.

¶9     The matter proceeded to trial on July 16, 2024. Officer Solorzano, Officer Cox, and Johnson testified to the circumstances of the arrest. The jury returned a verdict finding Johnson guilty of misdemeanor Operating a Vehicle with an Alcohol Concentration of 0.08 or More, 1st offense. Johnson was acquitted of Driving Under the Influence of Alcohol or Drugs, and Failure to Have Two Headlamps Properly Working.

¶10　On November 8, 2024, Johnson appealed the conviction to the District Court, raising two issues: (1) whether the Municipal Court erred in denying the Motion to Suppress results of the DUI investigation for lack of particularized suspicion; and (2) whether the Municipal Court erred in denying the Motion to Suppress Field Sobriety Maneuvers.  On January 29, 2025, the District Court affirmed the Municipal Court's conclusion that the officers possessed particularized suspicion for both the stop and resulting DUI investigation.  Johnson now appeals.

¶11　On appeal, Johnson raises several issues, which we restate as follows: (1) whether there was particularized suspicion for the officers to initiate a traffic stop; (2) whether there was particularized suspicion to expand the traffic stop into a DUI investigation; (3) whether the Municipal Court abused its discretion in admitting the results of the DUI investigation; and (4) whether law enforcement deprived Johnson of her due process rights to obtain an independent blood test.  Because we affirm the Municipal Court on all issues, we need not address Johnson's harmless error argument.  We address the dispositive issues in turn.

¶12　On Johnson's appeal from the Municipal Court, the District Court functioned as an intermediate appellate court.  *See* §§ 3-5-303, 3-6-110, MCA; *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461.  In her appeal to this Court, we review the case as if the appeal originally had been filed in this Court.  *Cantu*, ¶ 10 (citation omitted).  "We examine the record independently of the district court's decision, applying the appropriate standard of review."  *Cantu*, ¶ 10 (citation omitted).

5

**Particularized Suspicion for the Stop**

¶13　"We review a district court's denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether its interpretation and application of the law is correct." *State v. Kenfield*, 2009 MT 242, ¶ 15, 351 Mont. 409, 213 P.3d 461 (citation omitted). If our review of the record reveals a mistake has been made, the effect of the evidence has been misapprehended, or there is not substantial evidence to support findings of fact, then the findings are clearly erroneous. *Kenfield*, ¶ 15 (citation omitted).

¶14　Johnson claims the investigatory stop of her vehicle was unlawful because it was not supported by particularized suspicion based on objective data. Johnson alleges: (1) she did not commit any traffic violation; (2) officers fabricated particularized suspicion after the stop was made; and (3) the dismissal of the headlight charge proves the stop was unlawful.

¶15　"[A] peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. Whether particularized suspicion exists is determined by "(1) objective data from which an experienced police officer can make inferences; and (2) a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing." *State v. Ellison*, 2000 MT 288, ¶ 15, 302 Mont. 288, 14 P.3d 456 (citation omitted). Particularized suspicion is a question of fact which depends on the totality of circumstances. *State v. Pratt*, 286 Mont. 156, 161, 951 P.2d 37, 40 (1997). This "inquiry turns on what the officer knew, observed, or suspected at the time of the stop, and not what the defendant subsequently testifies to"

6

regarding the arrest. *State v. Wagner*, 2013 MT 159, ¶ 11, 370 Mont. 381, 303 P.3d 285. "An officer need not be certain, or even correct, that a person is engaged in criminal activity." *State v. Harning*, 2022 MT 61, ¶ 18, 408 Mont. 140, 507 P.3d 145 (citation omitted).

¶16 A violation of a statute is sufficient to justify a traffic stop. *Wagner*, ¶ 12. Although weaving within a lane is not a statutory violation, it is an articulable fact to be considered for particularized suspicion. *State v. Matthews*, 2025 MT 129, ¶ 8, 422 Mont. 392, 571 P.3d 1024. Even if Johnson did not commit a statutory traffic violation, "a search and seizure may be permissible even though the justification for the action includes a reasonable factual mistake." *Heien v. North Carolina*, 574 U.S. 54, 57, 135 S. Ct. 530 (2014).

¶17 Here, both officers testified to observing an inoperable headlight. The Municipal Court's review of the dash cam footage likewise supported the officers' testimony, and the dash cam footage displays Johnson's vehicle with an inoperable headlight swerving within its lane. Driving with an inoperable headlight is a statutory violation and this alone justifies the initial stop even if the officers had made a mistake of fact.

¶18 Johnson's assertion that Officer Solorzano never observed an inoperable headlight is unsupported. The Municipal Court was required to resolve conflicting evidence, and it found Officer Solorzano's testimony credible. Officer Solorzano observed Johnson driving with an inoperable headlight and swerving in her lane. The video evidence corroborated there was a basis for the stop. We note that it is not this Court's function, on

7

appeal, to reweigh conflicting evidence or to substitute our evaluation of the evidence for that of the trial court. *State v. Deines*, 2009 MT 179, ¶ 20, 351 Mont. 1, 208 P.3d 857.

¶19 Johnson cites evidence directly contradicting her theory that the stop was based on an unlawful hunch. The officers' recorded conversation and dash cam footage depicting Johnson's vehicle swerving in its lane, in combination with an observed inoperable headlight, contributed to particularized suspicion of criminal activity. The Municipal Court did not err in holding the officers had particularized suspicion for the stop. The Municipal Court's denial of Johnson's Motion to Suppress the initial stop is affirmed.

**Particularized Suspicion for the DUI Investigation**

¶20 With respect to a trial court's conclusions of law, we exercise plenary review and must determine whether the court's interpretation of the law is correct. *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 21, 329 Mont. 129, 122 P.3d 1220 (citation omitted).

¶21 Johnson claims the expansion of the stop and resulting arrest was unlawful because it was not supported by particularized suspicion, consent, or probable cause. Johnson alleges: (1) officers intended to make an arrest without any evidence; (2) there was no objective data to support the expansion of the stop to a DUI investigation; (3) officers coerced Johnson to exit the vehicle and perform the SFST; and (4) the PBT was not based on particularized suspicion.

¶22 SFSTs are considered searches under both the United States and Montana constitutions and require particularized suspicion. Even if the initial stop was lawful, the expansion to a DUI investigation where SFSTs and chemical testing are administered must

8

be supported by particularized suspicion that the driver is impaired. *State v. Larson*, 2010 MT 236, 358 Mont. 156, 243 P.3d 1130.

¶23 The State must satisfy two elements to show particularized suspicion: "(1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing." *Ellison*, ¶ 15 (citation omitted). "Particularized suspicion requires objective data from which an experienced police officer can make certain inferences and a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing." *State v. Estes*, 2017 MT 226, ¶ 17, 388 Mont. 491, 403 P.3d 1249 (citation omitted). Particularized suspicion is assessed under the totality of the circumstances. *State v. Zietlow*, 2017 MT 148, ¶ 9, 388 Mont. 26, 396 P.3d 740 (citation omitted).

¶24 Law enforcement may expand the "scope of an investigative stop beyond its initial purpose" based on additional information acquired during the stop. *State v. Stanley*, 2024 MT 271, ¶ 29, 419 Mont. 61, 558 P.3d 1147 (citation omitted). Particularized suspicion for a stop can serve as particularized suspicion for administering field sobriety tests. *Hulse v. State*, 1998 MT 108, ¶ 39, 289 Mont. 1, 961 P.2d 75.

¶25 If an officer has a particularized suspicion that a person is driving while under the influence, that officer may administer warrantless field sobriety tests. *State v. Steinmetz*, 1998 MT 114, 288 Mont. 527, ¶ 16, 961 P.2d 95. A lawful request for and administration of these tests cannot, without more, be characterized as "coercion." *Steinmetz*, ¶ 16. Further, "police do not have to warn a person of the right to withhold consent." *Steinmetz*, ¶ 18.

9

¶26 Here, Johnson's interpretation of the evidence is unsupported. Prior to the stop, officers observed—and the Municipal Court found the dash cam footage corroborated—Johnson swerving within her lane. Swerving within the lane is an indicator of possible impairment. In addition, several indicators of impairment were present on initial contact confirming the officers' suspicion. The Municipal Court noted Officer Solorzano observed Johnson had a smell of alcohol on her breath, slightly slurred speech, was unable to provide requested documents, and admitted that she consumed alcohol that evening. Based on the totality of these circumstances, there was sufficient particularized suspicion to expand the investigatory stop to a DUI investigation and conduct both the SFSTs and PBT. There is no error in the Municipal Court's order denying Johnson's motion to suppress the SFST and PBT results.

¶27 Johnson's assertion that the SFSTs were coerced and conducted without consent is incorrect. Officer Solorzano was not required to ask Johnson if she was willing to exit the vehicle or inform her that she did not have to perform the SFST. "Police do not have to warn a person of the right to withhold consent." *Steinmetz*, ¶ 18. Moreover, "[k]nowledge of the right to refuse consent is only one factor to be considered and is not determinative of the question of whether consent was voluntary; rather we must consider the totality of the circumstances surrounding the giving of consent." *State v. Olson*, 2002 MT 211, ¶ 21, 311 Mont. 270, 55 P.2d 935. Officer Solorzano's request that Johnson submit to SFSTs is not by itself coercion. *Steinmetz*, ¶¶ 15, 16. There is no evidence that Johnson's will had "been overborne [or her] capacity for self-determination critically impaired." *Steinmetz*,

¶ 18.  Given the totality of the circumstances, Johnson's reply of "okay," which preceded her exiting the vehicle, indicated she gave her consent knowingly and voluntarily.

¶28    Accordingly, there was sufficient evidence supporting particularized suspicion for the DUI investigation.  The Municipal Court did not err in denying Johnson's motion to suppress for lack of particularized suspicion.

**Admitting Results of the DUI Investigation**

¶29    "We review evidentiary rulings for abuse of discretion.  A trial court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice."  *State v. Fleming*, 2019 MT 237, ¶ 9, 397 Mont. 345, 449 P.3d 1234 (citation omitted).

¶30    Johnson claims the Municipal Court erred in admitting certain evidence. Particularly, Johnson alleges: (1) PBT results are not admissible as substantive evidence; (2) refusal evidence is generally admissible; (3) the foundation for the Intoxilyzer 9000 results were legally insufficient; and (4) the admission of erroneous evidence is prejudicial.

¶31    Johnson has failed to advance arguments and evidence in support of her contentions. "It is not this Court's obligation to develop parties' arguments for them."  *City of Billings v. Peterson*, 2004 MT 232, ¶ 45, 322 Mont. 444, 97 P.3d 532 (citation omitted).  Here, Johnson's arguments regarding the impact of the PBT results on her conviction are without merit as the State did not introduce the PBT results.  Accordingly, we will not address the argument now.

¶32   There is no discernable evidence of refusal in the record, and Johnson provides no context or explanation for analysis. Johnson offers no analysis as to how or why the results of the Intoxilyzer 9000 were legally insufficient.

¶33   Johnson cites to a string of statutes and case law alleging these results were unconstitutional and lacking foundation, yet each subsection is devoid of any explanation or analysis. It is not this Court's role to independently speculate on the application of law to the facts of this case. The Municipal Court did not abuse its discretion by admitting the Intoxilyzer 9000 results into evidence.

**Unpreserved Independent Blood Test**

¶34   Generally, the Court "does not consider arguments made for the first time on appeal." *State v. Homer*, 2014 MT 57, ¶ 12, 374 Mont. 157, 321 P.3d 77 (citation omitted). "[A] claimed error must have been preserved at the first-level appellate court in order for this Court to consider the issue." *State v. Akers*, 2017 MT 311, ¶ 20, 389 Mont. 531, 408 P.3d 142. "We previously have refused to invoke the common-law doctrine of plain error review when a party raises such request for the first time in his reply brief." *Fleming*, ¶ 40 (citation omitted). A defendant must make a timely objection to properly preserve an issue for appeal. *State v. Paoni*, 2006 MT 26, ¶ 35, 331 Mont. 86, 128 P.3d 1040.

¶35   Johnson asserts for the first time on appeal that the State failed to advise her of her right to an independent blood test, thus violating her due process rights. "Upon appeal from a judgment, a court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely

12

objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2)." Section 46-20-104(2) MCA.

¶36 Here, Johnson has not asked the Court for plain error review and she never raised or preserved the issue of an independent blood test in the record. Similarly, the alleged due process violation regarding the independent blood test was waived when it was not previously raised or preserved in the record. Accordingly, this Court declines to address the issue.

¶37 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶38 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON